UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF COLORADO
Honorable Howard R. Tallman

In re:                                          )
                                                )
**MICHAEL F. GORDON and**                       ) Case No. 13-16089 HRT
**REBECCA A. GORDON,**                          )
                                                ) Chapter 7
**Debtors.**                                    )
                                                )

## ORDER ON OBJECTION TO EXEMPTION

This case comes before the Court on *Trustee's Objection to Debtors' Claim of Exemption* (docket #19) (the "Objection").

Debtors have claimed funds held in a savings account as an exempt asset under COLO. REV. STAT. § 13-54-102(1)(s) that is applicable generally to funds held in or payable from retirement or pension plans and accounts.

The question presented is whether funds paid out of an exempt retirement account to the Debtors and retained by them in a savings account, into which the funds are traceable and without having been commingled with other funds, retain their character as exempt funds under COLO. REV. STAT. § 13-54-102(1)(s), even though they are no longer "held in or payable from any pension or retirement plan or deferred compensation plan . . . ." *Id.*

The Trustee bases his objection on similar Colorado bankruptcy cases decided both by this Court, *In re Pascual*, No. 09-21460-HRT (Bankr. D. Colo. filed Dec. 8, 2009), and by Judge Romero, *In re Cook*, No. 10-17093-MER (Bankr. D. Colo. filed Sept. 9, 2010). Subsequently, Judge Romero revisited the issue in *In re Bridges*, 2013 WL 1344572 (Bankr. D. Colo. April 2, 2013) (Romero, J.). *Pascual*, *Cook* and *Bridges* all reach the same conclusion that, once funds are withdrawn from an exempt retirement, pension or deferred compensation account, the funds lose their exempt status. In *Bridges*, Judge Romero finds "no case law [that] upholds the position that once [retirement] funds are withdrawn and placed into a regular bank account, they somehow retain their exempt status." *Id*. at *3.

In opposition to the Trustee's Objection the Debtors cite to Colorado case law that broadly stands for the proposition that Colorado's exemption statutes "are to be liberally construed for the purpose of giving effect to the beneficent object in view." *Edson-Keith & Co. v. Bedwell*, 122 P. 392, 393 (Colo. 1912) (citing *Barnett v. Knight*, 3 P. 747 (Colo. 1884); *McPhee v. O'Rourke*, 15 P. 420, 423 (Colo. 1887); *Wright v. Whittick*, 31 P. 490, 491 (Colo. 1892)). The Court has no argument with that general proposition but a liberal construction cannot be used to re-write the language of the statute.

ORDER ON OBJECTION TO EXEMPTION
Case No. 13-16089 HRT

> The language of the exemption statute at issue reads as follows:
>
> The following property is exempt from levy and sale under writ of attachment or writ of execution:
>
> . . .
>
> Property, including funds, *held in or payable from* any pension or retirement plan or deferred compensation plan, including those in which the debtor has received benefits or payments, has the present right to receive benefits or payments, or has the right to receive benefits or payments in the future and including pensions or plans which qualify under the federal "Employee Retirement Income Security Act of 1974", as amended, as an employee pension benefit plan, as defined in 29 U.S.C. sec. 1002, any individual retirement account, as defined in 26 U.S.C. sec. 408, any Roth individual retirement account, as defined in 26 U.S.C. sec. 408A, and any plan, as defined in 26 U.S.C. sec. 401, and as these plans may be amended from time to time . . . .

COLO. REV. STAT. § 13-54-102(1)(s) (emphasis added).

The language in the above exemption statute that the Court has emphasized is highly restrictive. It restricts the protection of the exemption statute to "funds, held in or payable from" certain retirement, pension or deferred compensation accounts. The Court cannot stretch the meaning of that language to embrace funds that *are not* held in a retirement account and *are not* payable from a retirement account but, instead, have been paid from such account and are under the Debtor's complete custody and control.

Immediately following the clause in § 13-54-102(1)(s) that reads "funds, held in or payable from any pension or retirement plan or deferred compensation plan," the Debtors point to the following language: "including those in which the debtor has received benefits or payments, has the present right to receive benefits or payments, or has the right to receive benefits or payments in the future . . . ." They argue that language is intended to include protection of the exemption statute for funds that represent benefits or payments that the debtor has received as well as those a debtor has a present or future right to receive. Trustee contends that the clause Debtors rely on is intended to refer to "plans" referenced in the prior clause rather than "funds" referenced in the same clause.

The rule of statutory construction known as the rule of the last antecedent holds that "relative and qualifying words and phrases, where no contrary intention appears, are construed to refer solely to the last antecedent with which they are closely connected." *Larson v. Sinclair Transp. Co.*, 284 P.3d 42, 54 (Colo. 2012) (quoting *People v. McPherson*, 619 P.2d 38, 40 (Colo. 1980)). The last antecedent noun appearing prior to the language the Debtors rely on is *plan*. Trustee is correct; the language refers to the *plans* referenced in the prior clause not to the word *funds*, which appears at the beginning of the clause.

ORDER ON OBJECTION TO EXEMPTION
Case No. 13-16089 HRT

Moreover, there is a second "and including" clause that specifies additional plan types that are qualified under certain federal statutes. That clause explicitly identifies plans and can only be construed to qualify the references to plans that appear in the prior clause. The Court cannot reasonably construe the statute to associate the first "including" clause with the word "funds" while associating the following "and including" clause with the word "plan." Both are plainly meant to modify the same term and the most natural and grammatically reasonable reading is that those clauses modify the references to plans that occur immediately prior.

The language in § 13-54-102(1)(s) contrasts with the language the Colorado legislature chose in writing COLO. REV. STAT. § 13-54-104, which exempts 75% of disposable earnings from execution or garnishment. That section defines "[e]arnings" as "[c]ompensation *paid* or payable for personal services . . . ." COLO. REV. STAT. § 13-54-104(1)(b)(I)(A) (emphasis added). In § 13-54-104, the Colorado legislature chose to include compensation "paid" in addition to compensation "payable." Under that language, which explicitly includes funds that have been paid into a debtor's hands, the courts have found that, when those funds have been deposited to a bank account, they do not lose their exempt character. *Rutter v. Shumway*, 26 P. 321, 322 (Colo.1891); *Guidry v. Sheet Metal Workers Nat. Pension Fund*, 39 F.3d 1078, 1086-87 (10th Cir. 1994) (en banc).

By contrast, § 13-54-102(1)(s) omits any reference to exemption of benefits that have been paid out to the debtor. This is despite the fact that such language has been included in other exemption statutes. Colorado's legislature has amply demonstrated that, whenever it intends to do so, it knows full well how to draft an exemption statute that explicitly protects not only sums that are payable from an exempt source but also sums that have been paid.

The Court must operate on the assumption that the Colorado legislature's omission of that language from § 13-54-102(1)(s) is neither a mistake nor an oversight but that it understands the meaning and effect of the language that it uses. Thus, § 13-54-102(1)(s) can only be read to protect funds while they are "held in or payable from" a retirement account. But once paid out – regardless of whether the funds are traceable into a segregated account or have been commingled – the exempt character of the funds has been lost.

The case of *Dillabaugh v. Ellerton*, 259 P.3d 550 (Colo. Ct. App. 2011), is the latest Colorado appellate court interpretation of § 13-54-102(1)(s). It examined a retirement plan that was administered solely as a direct liability of the debtor's employer; it was not qualified under ERISA and did not qualify for special tax treatment under any of the federal statutes referenced in § 13-54-102(1)(s). Consistent with the liberal interpretation that Colorado courts apply to the Colorado exemption statutes, it held that the debtor's right to receive funds from the retirement plan qualified as an exempt property right.

*Dillabaugh* has no application to the question currently before the Court. The *Dillabaugh* court applied a liberal interpretation to language that actually appears in the statute.

ORDER ON OBJECTION TO EXEMPTION
Case No. 13-16089 HRT

The court construed the term "retirement plan" to include privately funded and administered plans in addition to the ERISA qualified and tax qualified plans that are specifically recognized in the statute. By contrast, in arguing for the exemption of funds that have been paid out to them, the Debtors' seek a judicial re-writing of § 13-54-102(1)(s), under cover of a liberal interpretation, to insert language into the statute that does not presently exist.

Finally, the Debtors articulated the dilemma they face in actually being able to make use of their exempt retirement funds. Funds that are protected from the claims of creditors while they remain in the retirement account are in jeopardy of being lost once they are withdrawn and before they can be put to use to defray the Debtors' living expenses.[1] Those concerns mirror the discussion that the Tenth Circuit Court of Appeals quoted in *Guidry*:

> *It is argued with much ingenuity that the earnings of the laborer, when received by him, are no longer wages, but capital; that the exemption statute has performed its office when it has enabled the laborer to secure his wages from his employer* without let or hindrance; and that thereafter the statute cannot be invoked in his favor. The statute cannot be thus reasoned away. *Such a construction is narrow and illiberal. It would compel the laborer to leave his earnings in the hands of his employer, or else forego the protection of the statute altogether.* It would not only deprive him of the privilege of depositing his earnings with any bank or other depository for safe-keeping, but would subject his wages to supplemental proceedings even in his own pocket; for, if earnings once received immediately lose their character as wages, then it is evident that *the laborer could never retain his earnings for a single hour without exposing them to the very perils which the statute was designed to avert. Such a construction would practically frustrate the beneficent objects of the statute.*

*Guidry v. Sheet Metal Workers Nat. Pension Fund*, 39 F.3d 1078, 1086 (10th Cir. 1994) (en banc) (quoting *Rutter v. Shumway*, 26 P. 321, 322 (Colo.1891)) (emphasis in original).

The Court does not discount the Debtors' concerns. They are real and practical. Moreover, *Rutter*'s discussion states a powerful policy argument for extending the statute's exemption protection to funds that have been paid out similar to the operation of the exemption for disposable earnings in § 13-54-104. But, it is an argument that must be directed to Colorado's legislature. That is the body with the privilege of passing on matters of state

---

[1] This issue is of less concern in the context of a bankruptcy proceeding. Here, the focus is on the exempt or non-exempt status of an asset on the date the bankruptcy case is filed. But that does not change the construction of the statute. It must be construed the same whether in bankruptcy court or a state garnishment proceeding.

ORDER ON OBJECTION TO EXEMPTION
Case No. 13-16089 HRT

exemption policy. The Court's interpretive function begins and ends with the language the legislature used in its drafting of § 13-54-102(1)(s).

Therefore, it is

**ORDERED** that *Trustee's Objection to Debtors' Claim of Exemption* (docket #19) is GRANTED.

Dated this __24th__ day of October, 2013.

          **BY THE COURT:**

          Howard R. Tallman, Chief Judge
          United States Bankruptcy Court